CHARLES HORTMAN, RESPONDENT, v. J. H. MORRIS COMPANY, APPELLANT.

Submitted October 16, 1931—Decided February 17, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the appellant, *James J. McGoogan.*

For the respondent, *Frank I. Casey.*

PER CURIAM.

The plaintiff was seriously injured, in part at least, by falling down the shaft of a temporary builder's elevator operated by the defendant company and recovered a judgment against the appellant for damages which is now before us for review.

A preliminary question to consider is whether the matters argued on this appeal are now available to the appellant. There was a rule to show cause why a new trial should not be granted heard before the trial court. The reasons then assigned were, first, that the verdict was excessive; secondly, that it was contrary to the charge; and thirdly, that "the verdict is contrary to law." The grounds of appeal assigned and now argued are that the court erred in refusing to nonsuit, and also erred in refusing to direct a verdict for the defendant.

In the case of *Cleaves* v. *Yeskel,* 104 *N. J. L.* 497, it was held by the Court of Errors and Appeals that "on appeal from a judgment entered after defendant's rule to show cause had been discharged, the appellate court will not consider and decide any question which was assigned as ground for setting the verdict aside on the rule, such question being *res judicata,* whether argued or not, and although not decided in terms on the rule to show cause." If, therefore, the grounds of appeal now urged were embraced within any of the three reasons assigned for a new trial, they cannot be now considered. Clearly they were not embraced in either the first or the second. The third, as we have seen, is that "the verdict is contrary to law." Under the old practice such a reason was common enough and is to be found in a standard book like Besson's New Jersey Law Precedents at page 207; but we are not aware of any reported decision in which its efficacy and purport have been discussed. It seems to be a sort of general assignment of error and, as such, would be entirely futile; and since the recent amendment of rule 125 of this court dating from 1915 in which it is provided that the party entering the rule shall write down the reasons upon which he rests such motion with such particularity as is now required in stating grounds of appeal, it would seem plain that the general reason that the verdict is contrary to law is something that the court on a rule to show cause is not required to consider, and properly should not consider. See *Carey* v. *Deems,* 101 *N. J. L.* 419 (at *p.* 423). From the memorandum filed by the trial court in discharging the rule to show cause, it is entirely plain that that court gave no consideration whatever to any reason except that of excessive damages. Notwithstanding the broad language of the case of Cleaves *v.* Yeskel, we think it is not applicable to a case where, as at present, the reason assigned is so vague, indefinite and general in character as to be of no legal effect whatever.

We turn, therefore, to the merits of the case.

The evidence fails to show how the accident happened beyond the fact that the plaintiff fell four floors to the bottom of the elevator shaft, following the elevator itself which was

descending to the basement and having thereon two wheel-barrows, either empty or loaded with rubbish. The plaintiff was an electrician employed by the electrical contractor on a new building, who was a subcontractor of the defendant. The defendant had the general contract and had constructed the temporary elevator with its hoisting apparatus consisting of a steam engine in the basement and the usual ropes or cables and other appliances. There was a system of signals to guide the engineer in raising and lowering the elevator. The plaintiff and his fellow-workman, a man named Shafer, were working at or near the door leading into the elevator shaft on the fourth floor. There was a wooden grating which was kept most of the time in front of this door, but which at this particular time was not there. Whether the plaintiff and Shafer removed it or whether it had already been re-moved when they went to work at that point is not clear on the evidence. From the door of the shaft two planks, twelve or more feet in length, extended side by side to a finished portion of the floor at a slight incline from the elevator to the outer end and were intended to facilitate the wheeling of wheel-barrows, &c., from the elevator to the finished floor. These two planks were tied together by a short cross-plank at the entrance of the elevator and this cross-plank was nailed down to the other two planks. The work that plaintiff was to do was to run a conduit under one or both of these planks and, in order to do this, it was necessary to take up one of the planks, and to take up that plank it was necessary to take off the cross-piece; and the only evidence on this point of the case is that of the plaintiff whose memory was badly im-paired, if not destroyed, by the accident, and the testimony of Shafer. This evidence indicates that plaintiff was stand-ing at a level of two or three feet below the plank on an old roof and was leaning over the cross-piece with a hammer in his hand in the act of taking off the cross-piece, or draw-ing a nail, when the elevator, without warning as the jury might find, came down from above with what is described as a swish, and the moment after it had passed, the plaintiff appeared to dive after it head first, his head coming between

the two wheel-barrows, and was found in a state of collapse at the bottom of the shaft. The evidence of one of the witnesses for the defendant, which is not contradicted, is to the effect that the cross-plank could not be taken up unless the grating or gateway was removed from its place. This is not so important on the question whether the plaintiff and Shafer removed it as to indicate that the plaintiff must have had his head very close to the opening of the shaft, if not indeed partly within it. There is no evidence whatever of anything projecting from the elevator and no intimation that the elevator did anything except to move rapidly down the shaft at that juncture. There appears to be no testimony to show whether or not the plaintiff was struck on the head by the elevator. There were injuries to his head but they may as well have been caused by his fall down the shaft.

The motions to nonsuit and direct were predicated both upon the alleged absence of negligence of the defendant and the alleged contributory negligence of the plaintiff. We think that there was at least a jury question with regard to negligence of the defendant, although it may well be doubted that such negligence, if it existed, was the principal cause of injury to the plaintiff unless it can be said that the plaintiff fell down the shaft because it was not protected by a gate, and can be further said that defendant was under a duty so to protect it while the plaintiff was working in that vicinity. On these points the case for the plaintiff is very meagre. But it seems unnecessary to pursue this subject further because we consider that a clear case of contributory negilgence was shown. The plaintiff was in a place where the open door of the shaft was perfectly obvious to him. In fact, it is clear from all the evidence in the case that it was necessary that that door should be open in order that he could do his work. He necessarily knew that the elevator was constantly traveling up and down and it is impossible to see how he could have been struck by the elevator unless his head was partially within the elevator shaft. Ordinary common sense requires one who puts his head in an elevator shaft to see to it that the elevator is not coming down to

strike him. There is nothing to show that there was any notice to the defendant or any of its servants, at any time that the plaintiff expected to intrude on the elevator shaft, and, therefore, there was no reason why the defendant should have to provide for such a contingency. If, therefore, the explanation of the accident is that plaintiff had his head in the elevator shaft and was struck by the descending elevator, the case for contributory negligence seems clearly proved. On the other hand, if the plaintiff simply fell down the elevator shaft knowing that the shaft was there, and that the doorway was open, the case is similar in all essential respects to *Smith* v. *Van Sciver*, 58 *N. J. L.* 190, in which a judgment of nonsuit was affirmed.

We conclude, therefore, that there was error on the part of the trial court in refusing to nonsuit or take the case from the jury and for this error the judgment must be reversed.